IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMBERLEE D.,[1]

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]

Defendant.

Case No. 6:20-cv-00885-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Amberlee D. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is named as the defendant in place of "Commissioner Social Security Administration." *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

405(g), and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court reverses the Commissioner's decision and remands for a direct finding of disability and immediate calculation and payment of benefits.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATIONS

Plaintiff was born in January 1976, making her thirty-eight years old on December 31, 2014, her alleged disability onset date. (Tr. 36, 74, 100.) Plaintiff graduated from high school and has past relevant work experience as a fast-food worker, fast-food services manager, and

PAGE 2 – OPINION AND ORDER

telephone sales representative. (Tr. 18, 228-29.) In her applications, Plaintiff alleged disability due to brain cysts, neck and back surgery, chronic pain, degenerative disc disease, migraines, seizures, attention deficit disorder, head trauma, reactive air disease, and optic neuropathy. (Tr. 75, 227.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on September 15, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 141.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on December 21, 2018. (Tr. 36-70.) On May 13, 2019, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 10-20.) On March 26, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-3.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.   THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

PAGE 3 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 10-20.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 31, 2014, her alleged disability onset date. (Tr. 13.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "lumbar degenerative disc disease with spine disorder, dysfunction of major joints – hip arthritis; migraine, epilepsy, [and] obesity." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 14.)

The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; (2) Plaintiff can occasionally stoop, kneel, crouch, and crawl; and (3) Plaintiff can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed moving machinery. (Tr. 15.) At step four, the ALJ concluded that Plaintiff was able to perform her past relevant work as a fast-food worker, fast-food services manager, and telephone sales representative. (Tr. 18.) At step five, the ALJ determined that Plaintiff was not

PAGE 4 – OPINION AND ORDER

disabled because she was capable of performing past relevant work and, alternatively, a significant number of jobs existed in the national economy that she could perform, including work as an inspector and hand packager, laundry sorter, and routing clerk. (Tr. 18-19.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) rejecting Plaintiff's testimony as to her headache symptoms; (2) rejecting the opinion of a post-hearing consultive examiner, Dr. Kevin Myers; and, in the alternative (3) failing to develop the record. (Pl.'s Opening Br. at 4-12.) As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence in the record.

## I.   PLAINTIFF'S SYMPTOM TESTIMONY

### A.   Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with

PAGE 5 – OPINION AND ORDER

the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

      **B.**    **Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 15, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. See *Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ failed to meet that standard.

The Commissioner asserts that the ALJ provided two clear and convincing reasons for discounting Plaintiff's testimony regarding "the intensity, persistence, and limiting effects of" her migraine headache symptoms. (*See* Tr. 15, the ALJ found that Plaintiff's "symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ."). Specifically, the Commissioner argues that (1) "the ALJ considered the treatment record" and (2) "the ALJ considered Plaintiff's migraine testimony in the context of the objective evidence in the record." (Def.'s Br. at 3-6.)

      **1.**    **Treatment Record**

Although the ALJ did not expressly discount Plaintiff's testimony on the ground of effective treatment, the ALJ noted that "[Plaintiff] reported taking sumatriptan with relief, as

PAGE 6 – OPINION AND ORDER

well as Imitrex which helped."[3] (Tr. 16.) An ALJ may discount a claimant's testimony based on effective treatment of the claimant's condition. *See Bettis v. Colvin*, 649 F. App'x 390, 391 (9th Cir. 2016) (holding that the ALJ met the clear and convincing reasons standard, and stating that the ALJ appropriately discounted the claimant's testimony on the ground that his "condition improved with treatment," because "'[i]mpairments that can be controlled effectively with [treatment] are not disabling'") (citation omitted). Here, however, substantial evidence does not support the ALJ's finding that treatment effectively controlled Plaintiff's chronic migraine headaches.

The ALJ cited two examples of medical providers commenting on treatment efficacy: the first in July 2017 ("[s]he takes sumatriptan, with relief") and the second in February 2019 (she is "[u]sing Imitrex, which helps"). (Tr. 829, 1257.) The Commissioner acknowledges that the record demonstrates medication was not always helpful in treating Plaintiff's headaches, noting medical records that sumatriptan was "not fully helping" and that, on another occasion "did not provide relief." (Def.'s Br. at 5; *see also* Tr. 440, 805.) In fact, the longitudinal record demonstrates that Plaintiff consistently sought medical care for her chronic headaches, often requiring medication beyond sumatriptan to control her pain. (*See, e.g.*, Tr. 848, noting Plaintiff "had an [emergency department] visit in July [2017], for migraine, when she was treated with Dilaudid, Compazine, Benadryl, and Zofran, with relief").

A review of the medical evidence reflects that the ALJ cited to isolated examples of effective treatment, without acknowledging other evidence in the record reflecting that medication was not consistently effective in treating Plaintiff's headaches. An ALJ errs when he

---

[3] Sumatriptan is the generic version of Imitrex. *See, e.g.*, *Woolf v. Saul*, No. 1:18-CV-00280-CWD, 2019 WL 4580037, at *15 (D. Idaho Sept. 20, 2019) (noting "Petitioner was prescribed Imitrex (Sumatriptan) and narcotic medication for his pain").

considers the claimant's evidence selectively and ignores evidence that contradicts his findings. *See Adeena W. v. Saul*, No. 6:19-cv-00051-SB, 2020 WL 2992191, at *5 (D. Or. June 4, 2020) (noting that ALJs cannot "cherry-pick" from the record to support their findings and "ignore evidence that contradicts [their] findings"); *Fanlo v. Berryhill*, No. 17-cv-1617-LAB (BLM), 2018 WL 1536732, at *10 (S.D. Cal. Mar. 28, 2018) ("The ALJ cherry-picked Plaintiff's progress notes . . . to support her conclusion that Plaintiff was stable and improving, but the ALJ failed to acknowledge progress notes from the same time period that directly contradicted her conclusion."); *Scrogham v. Colvin*, 765 F.3d 685, 698-99 (7th Cir. 2014) (explaining that an ALJ errs by "consider[ing] [record] evidence . . . selectively [and] ignoring evidence that contradict[s] her findings").

For these reasons, the Court finds that substantial evidence does not support the ALJ's conclusion that Plaintiff's treatment plan effectively controlled her headaches.

### 2.     Conflicting Medical Evidence

The ALJ discounted Plaintiff's headache testimony on the ground that it was inconsistent with the objective medical evidence. (Tr. 16.) This was a clear and convincing reason for discounting Plaintiff's testimony. *See Flores v. Colvin*, 546 F. App'x 638, 640 (9th Cir. 2013) (holding that the ALJ met the clear and convincing reasons standard and noting that the ALJ discounted the claimant's testimony on the ground that it was "inconsistent with the medical evidence"). Here, however, substantial evidence does not support the ALJ's findings.

First, the Commissioner acknowledges that the ALJ's conclusion that Plaintiff "reported experiencing headaches only between 2001 to 2007" (Tr. 16), was error. (Def.'s Br. at 4 n.2.) Indeed, the record demonstrates that Plaintiff experienced headaches from 2001 to 2007 following a 2001 motor vehicle accident, but also demonstrates that she was in a second motor vehicle accident in 2010 causing her to receive "16 titanium screws, [] two herniated discs, and []

PAGE 8 – OPINION AND ORDER

many surgeries to address pain" (Tr. 1126), and that she continued to suffer from chronic headaches after 2007. (*See, e.g.*, Tr. 390, noting that Plaintiff complained of increasingly frequent headaches beginning in January 2015; Tr. 397, 399-400, Plaintiff was prescribed propranolol in March 2015 to treat her headaches, and in April 2015 her physician concluded that a prior prescription for tramadol may have contributed to her headaches; Tr. 337-38, an April 2015 MRI revealed "mild to moderate white matter signal abnormalities," which were "possible" indicia of "migrainous and demyelinating lesions"; Tr. 440, by July 2016, Plaintiff was using Imitrex daily and "oxycodone[] and ibuprofen as ordered for when having headaches" but those medications were "not really helping").

      Second, the ALJ found that Plaintiff's "mild headache" had improved after suffering a seizure in August 2016 (Tr. 16, 547), and that her symptoms "spontaneously resolved" after suffering a seizure episode in June 2017 that had resulted in a headache, facial drooping, twitching, and vision changes. (Tr. 16.) However, the record reflects that Plaintiff's August 2016 seizure, during which she vomited, fell, and lost control of her urine, resulted in a post-seizure headache that had improved a few days later, but the record does not support a conclusion that her headaches were always mild nor that they resolved after the August 2016 seizure. With respect to the June 2017 seizure, the record reflects that Plaintiff's vision impairment and facial drooping spontaneously resolved, not her headache, which required treatment with oxycodone. (Tr. 815.) In fact, Plaintiff sought treatment that same month for acute vision loss in her right eye accompanied by a "headache, which has gradually worsened since its onset three days ago," and the provider noted that Plaintiff "takes Imitrex for migraines, and has tried in the last couple of days without relief." (Tr. 805.) A contemporaneous MRI showed a "suspicious appearing mass at the right orbital apex" of Plaintiff's brain and "multiple abnormalities in the white matter," and

PAGE 9 – OPINION AND ORDER

her physician concluded that "these white matter changes almost surely represent chronic small vessel ischemic disease." (Tr. 815.) Furthermore, in July 2017 (i.e., the following month), Plaintiff complained of severe headaches three times per week, with mild to moderate headaches every other day. (Tr. 829.) Thus, the ALJ's conclusion that Plaintiff's headaches improved and spontaneously resolved is not supported by substantial evidence in the record.

Third, the ALJ relied on CT scans of Plaintiff's brain, pointing to one being "entirely normal" and others showing "white matter foci that could be seen with migraine headaches." (Tr. 16.) However, the "entirely normal" imaging cited by the ALJ was a "noncontrast CT scan of the head" conducted to rule out trauma after Plaintiff suffered a fall. (Tr. 726, 732.) The other CT the ALJ cited was actually a "[m]ultiplanar multi-sequence MRI of the brain and orbits without and with gadolinium based intravenous contrast" ordered after Plaintiff complained of visual changes and a migraine. (Tr. 790.) The "white matter foci" observation relied upon by the ALJ, in context, demonstrated that Plaintiff has "[p]unctate FLAIR hyperintense white matter foci, greatest in the frontal lobes, which are nonspecific *but can be seen with migraine headaches*, early onset chronic microvascular ischemic disease, and other nonspecific postinfectious/postinflammatory etiologies." (*Id*.) (emphasis added). The objective medical evidence on which the ALJ relied to discount Plaintiff's symptom testimony in fact corroborated Plaintiff's testimony about her chronic migraine headaches.

Finally, the ALJ cited to a September 2018 record and found that Plaintiff's migraines were "settling down some" and that "stress in her relationship may have triggered them." (Tr. 990.) However, other medical records from September 2018 show Plaintiff continued to suffer from "chronic" headaches, including one severe enough for an emergency room visit. (Tr. 1114; *see also* Tr. 1066, 1082, 1122, 1126, 1128, Plaintiff continued to report headaches severe

PAGE 10 – OPINION AND ORDER

enough to cause seizures). Thus, the medical evidence on which the ALJ relied does not support his conclusion that Plaintiff's headaches were situational or that her headaches had resolved.

For these reasons, the Court concludes that substantial evidence does not support the ALJ's discounting of Plaintiff's testimony on the ground of conflicting medical evidence. However, even if the objective medical evidence did not corroborate Plaintiff's testimony, the ALJ cannot rely on that as the sole reason to discredit Plaintiff's testimony. *See Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony about debilitating mental and physical impairments) (citation omitted). Accordingly, the ALJ erred in discounting Plaintiff's testimony. *See Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.").

In summary, the Court finds that the ALJ's stated reasons for discounting Plaintiff's symptom testimony were not supported by substantial evidence in the record.[4]

## II. REMEDY

### A. Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or

---

[4] Plaintiff also argues that the ALJ erred by rejecting the opinion of a post-hearing consultive examiner and, in the alternative, failing to develop the record. (Pl.'s Opening Br. at 8, 12.) Because the Court finds harmful error in the ALJ's improper discounting of Plaintiff's symptom testimony, the Court does not address Plaintiff's other assignments of error.

explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

**B.    Analysis**

The Court finds that Plaintiff has satisfied the credit-as-true standard here. For the reasons stated above, the ALJ failed to provide a legally sufficient basis for rejecting Plaintiff's headache symptom testimony. Furthermore, the record has been fully developed with respect to Plaintiff's headaches, and demonstrates that if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand.

Plaintiff testified that she suffers from chronic headaches that sometimes cause seizures, that she has to lie down in response thereto, and that this occurs "a couple times a week." (Tr. 51-52.) She explained that it takes "a couple hours" after the start of the migraine before she can engage in activity again, but if medication does not resolve the headache, she is "down for the

PAGE 12 – OPINION AND ORDER

rest of the day." (Tr. 53.) Plaintiff's medical records corroborate the frequency of her headaches as "every other day," that she was suffering severe headaches three times per week in July 2017, "intermittent" headaches in June 2018, "chronic headaches" in September 2018, and a headache severe enough for an emergency department visit in September 2018. (Tr. 829, 1062, 1114, 1122.)

At the hearing, the ALJ asked the VE whether absenteeism would rule out competitive employment. (Tr. 67-68.) The VE testified that if an individual was absent, arrived late, left early, or needed to leave throughout the day "one day per month on an ongoing basis," that "would rule out competitive employment." (Tr. 68.) Had the ALJ properly considered Plaintiff's headache testimony summarized above, her testimony would require a finding of disability based on Plaintiff's inability to perform competitive employment, and therefore further proceedings would serve no useful purpose here.[5]

For these reasons, and because the Court does not have serious doubt about whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits. *See Varela v. Saul*, 827 F. App'x 713, 714 (9th Cir. Sept. 28, 2020) (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled"); *Weirick v. Saul*, 825 F. App'x 446, 450 (9th Cir. Sept. 8, 2020) (reversing district court opinion affirming

---

[5] The Court acknowledges that shortly after the ALJ issued his decision, the Social Security Administration ("SSA") issued Social Security Ruling, SSR 19-4P; Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders ("SSR 19-4P"). *See* SSR 19-4P, 2019 WL 4169635 (Aug. 26, 2019). SSR 19-4P specifically addresses how the SSA evaluates whether a claimant has a medically determinable impairment of a Primary Headache Disorder. While these regulations did not apply to the ALJ's decision on May 13, 2019, the regulations would have applied on remand. (*Id.* at n.27.)

PAGE 13 – OPINION AND ORDER

the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "the vocational expert's testimony establishes that if the improperly discredited opinions of the treating physicians were credited as true, there would be no jobs in the national economy that she could perform and 'the ALJ would be required to find the claimant disabled on remand' " (citing *Garrison*, 759 F.3d at 1020)); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony of [the treating psychologist], the lay witnesses, and [the claimant], would be unable to perform competitive employment").

## CONCLUSION

For these reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for a direct finding of disability and immediate calculation and payment of benefits.

**IT IS SO ORDERED.**

DATED this 1st day of November, 2021.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 14 – OPINION AND ORDER